Filed 3/1/21  In re Z.H. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re Z.H. et al.,<br><br>Persons Coming Under the Juvenile Court Law. | B307650<br><br>(Los Angeles County Super. Ct. No. 20CCJP03819) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>M.S.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed in part and vacated in part.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

M.S. (Mother) argues substantial evidence does not support the juvenile court's assertion of dependency jurisdiction over two of her three children, Z.H. and K.L., made under Welfare and Institutions Code section 300, subdivision (b)(1).[1] Mother also challenges the court's removal order.

We affirm in part and vacate in part. We agree with Mother that substantial evidence does not support count b-3 in the sustained section 300 petition, which alleged her history of mental illness endangered the children. We vacate the juvenile court's jurisdictional findings as to that count. We conclude that substantial evidence supports the juvenile court's removal order, and affirm that order.

### FACTUAL AND PROCEDURAL BACKGROUND

This matter concerns two of mother's three children: six-year-old Z.H., and infant K.L.[2] K.H. is the father of Z.H. K.L. Sr. is the father of K.L. This opinion refers to Z.H. and K.L. collectively as "the children."

_____

[1] Subsequent undesignated citations are to the Welfare and Institutions Code.

[2] Mother's nine-year old son, Z.P., is in legal guardianship with the maternal grandmother, and is not a subject of this appeal.

2

**A.     Events Leading up to Assertion of Dependency Jurisdiction**

On June 23, 2020, the Department of Child and Family Services (Department) received a referral alleging Mother and K.L. Sr. neglected and emotionally abused K.L.  The reporting party expressed concern for K.L.'s safety under the care of his parents due to ongoing domestic violence.  The most recent domestic violence incident occurred inside a moving vehicle at 1:00 a.m. on June 21, 2020.  Mother was "driving at high speed and was swerving."  While dropping K.L. Sr. off at a friend's house, Mother exited the vehicle, and began screaming at K.L. Sr.  As this verbal conflict escalated, Mother removed an object from the trunk of the vehicle, and used the object to break a neighbor's car window.  The neighbor reacted by breaking Mother's front car window.  After Mother began driving away, the neighbor followed her, and a car chase ensued.  The infant K.L. was in the vehicle throughout this incident.

A children's social worker (CSW) interviewed both the paternal and maternal grandmothers.  The paternal grandmother stated that Mother and K.L. Sr. engaged in ongoing, weekly domestic violence.  The paternal grandmother also indicated that Mother had disclosed being diagnosed with depression, anxiety, and bipolar disorder, but Mother was not currently taking any medication.  The maternal grandmother confirmed she had legal guardianship over Mother's eldest child, Z.P.  The maternal grandmother also indicated Mother had mental health problems and was currently in therapy.

When the CSW interviewed Mother, Mother confirmed the domestic violence incident involving K.L. Sr., and added that K.L. Sr. had choked her and attempted to physically remove K.L.

3

from her.  Mother indicated she planned to obtain a restraining order against K.L. Sr.  She further indicated that she and K.L. Sr. were no longer romantically involved, and that she did not expect any of her children to be around him in the future.

Mother admitted she had been diagnosed with bipolar disorder, depression, and anxiety at a young age.  Mother stated she no longer had bipolar disorder, and that the last time she took medication for bipolar disorder was when she was 18 years old.  (Mother was 25 years old at the time of the interview.)  Mother indicated she had been diagnosed with post-traumatic stress disorder after she was sexually assaulted in 2018.  Mother sought therapy following the assault.  Mother stated she was not currently taking medication.

The CSW interviewed Z.H.  Z.H. appeared developmentally delayed with a speech impediment.  Z.H. stated that "mommy and [K.L. Sr.] argue all the time," and that "mommy hits and argues with [K.L. Sr.] all the time, [K.L. Sr.] does not hit mommy."

The CSW next interviewed K.L. Sr.  K.L. Sr. reported that the June 21, 2020, domestic violence incident escalated once Mother began screaming at him and prevented him from leaving her vehicle.  He said they engaged in constant and ongoing domestic violence.  He reported Mother had physically assaulted him on several occasions in front of the children.  He reported Mother attempted to hit him and his friends with her car on several occasions, sprayed mace on his face, punched him on several occasions, and pulled a knife on him on two occasions.  The children were present when Mother attempted to stab K.L. Sr. with a knife.  He denied ever hitting Mother, but admitted he grabbed her so she would not hit him.

4

On July 7, 2020, the Department conducted a Child Family Team Meeting with the family at the maternal grandmother's home. Department personnel suggested the maternal grandmother take legal guardianship over K.L. and Z.H. in order to mitigate its safety concerns regarding Mother's "unstable mood, unchecked mental health issues and current or ongoing domestic violence in the home." Mother declined. Mother said she wanted to freely take the children wherever she wanted to go. When the maternal grandmother responded that she would no longer allow Mother to take the children out of the home, Mother stated, "Those are my children[,] I can take them out when I want."

On July 15, 2020, the Department detained Z.H. and K.L. and placed them with the maternal grandmother.

## B.     The Petition for Jurisdiction

On July 17, 2020, the Department filed a section 300 petition, under subdivisions (a) and (b)(1), on behalf of Z.H. and K.L., alleging the children were at risk due to a history of violent physical and verbal altercations between Mother and K.L. Sr. in the presence of the children; K.L. Sr.'s failure to protect K.L. from Mother's violence; Mother's reckless driving at high speeds with the children and K.L. Sr. as passengers in the vehicle; Mother's mental and emotional problems including aggression and a diagnosis of depression, anxiety, PTSD, and bipolar disorder; Mother's failure to take psychotropic medication as prescribed; and K.L. Sr.'s failure to protect K.L. from Mother.

The juvenile court held the detention hearing on July 22. The court detained the children from the parents, ordered monitored visitation, and ordered Mother and K.L. Sr. not to see

5

one another.  The court granted requests by Mother and K.L. Sr. for mutual temporary restraining orders.

## C.     Subsequent Investigation

On August 13, 2020, a dependency investigator (DI) interviewed Mother at the Department's offices.  Mother stated that although she was prescribed psychotropic medication for bipolar disorder when she was a teenager, she had stopped taking those medications while she was still a minor.  She was prescribed medication for PTSD in December 2019, but was no longer taking any medication.  Mother stated, "I know how to thrive/survive without medication.  I call for help when I see it, I see my therapist when I need to, I call my [s]ocial [w]orker at the hospital. . . .  I made my appointments to get mental health treatment when I felt I needed it, not my doctors."

A prescription issued for Mother in December 2019 documented that no refills were authorized.  The CSW confirmed that Mother received mental health treatment from January to December 2019, and was scheduled for several appointments with Coastal Asian-Pacific Islander Mental Health Services ("Coastal API") in August 2020.

Mother had received a certificate as a certified nursing assistant and was currently enrolled at Los Angeles Harbor College in the nursing program.  She told the DI, "I need to continue with school, continue my domestic violence and [p]arenting classes.  It's good to learn different ways of looking at things.  I need to take care of my mental health."  Mother wanted Z.H. and K.L. returned to her, stating, "I want to be a better person for them."  The DI concluded that "[M]other is willing to work towards resolving the issues involving her family."

The Department recommended the juvenile court sustain the section 300 petition, declare the children dependents of the court, and order suitable placement with family reunification services for Mother, K.H., and K.L. Sr.

In its August 26, 2020, last minute information, the Department reported the DI assessed K.H.'s home and found no safety concerns. K.H. wanted Z.H. placed with him. The CSW observed Z.H. was bonded with K.H. and the child enjoyed the company of his halfsiblings. Mother had provided proof of enrollment in a parenting class.

As to Mother's mental health, Mother's prior psychiatrist, Emily Ng, M.D., at Harbor UCLA Medical Center, left a voicemail for the DI reporting Mother's case had been transferred to Coastal API, "and provided no further information." The Department concluded, "It remains unknown to the Department whether or not [M]other needs the support of a psychiatrist and/or medication, to sustain her mental health."

**D.    Adjudication and Disposition**

On August 27, 2020, the juvenile court held a combined jurisdiction and disposition hearing.

The juvenile court found counts a-1 and b-1 of the amended section 300 petition true, which contained the following jurisdictional findings: "The children, [Z.H.] . . . and [K.L.'s] . . . mother, [M.S.] and [M]other's male companion, [K.L. Sr.], father to the child, [K.L.,] have a history of engaging in violent physical and verbal altercations in the presence of the children."

The findings included specific incidents in which K.L. Sr. struck Mother's car with a bat, choked Mother with his hands, and repeatedly struck Mother's vehicle with his feet. As to Mother, the findings included several incidents in which she

7

struck K.L. Sr. with a crowbar, a Taser, a bat, her fists, and sprayed him with pepper-spray. She attempted to hit K.L. Sr. with her vehicle on numerous occasions. On other occasions, she brandished a knife and threatened to strike K.L. Sr.

The juvenile court found the amended section 300 petition true as to count b-2, finding that on June 21, 2020, "[M]other recklessly drove a vehicle at high speeds while the children and [K.L. Sr.] were passengers in the vehicle. . . . [M]other broke a neighbor's car window with an unknown object, the neighbor in return broke [M]other's front car window, [M]other sped off in the vehicle and the neighbor chased [M]other in the vehicle while the child, [K.L.,] was a passenger in the vehicle."

Finally, the juvenile court found the amended petition true as to count b-3, finding: "The children, [Z.H.] . . . and [K.L.'s] . . . mother, [M.S.] has mental and emotional problems including aggression and a diagnosis of depression, anxiety, [PTSD] and Bipolar Disorder. [M]other failed to take [M]other's psychotropic medication as prescribed. [M]other failed to consistently participate in mental health treatment. . . . Such mental and emotional problems on the part of [M]other endangers the children's physical health and safety and places the children at risk of serious physical harm, damage."

The juvenile court declared the children dependents of the court. It found by clear and convincing evidence under section 361, subdivision (c), that there was a substantial danger if the children were returned home, there were no reasonable means to protect them without removal, and reasonable efforts had been made to prevent or eliminate the need for removal.

The juvenile court stated it was premature to release the children to Mother, although it commended her for enrolling in services.

The juvenile court ordered Mother to participate in monitored visitation with the children, on-demand drug testing, a parenting program, individual counseling, a psychological assessment, and to take all prescribed medication.

Mother timely appealed.

## DISCUSSION

### A.     Appellate Jurisdiction

Mother appeals the jurisdictional findings concerning count b-3, and the removal orders. She does not challenge the jurisdictional findings concerning K.L. Sr., and K.L. Sr. does not appeal. Mother also does not challenge the jurisdictional findings made in counts a-1, b-1, and b-2 from the sustained section 300 petition.

Mother acknowledges that even if the jurisdictional findings made in count b-3 are reversed, dependency jurisdiction over the children will remain. As a result, we must ensure that appellate review at this stage of the proceedings is appropriate.

Dependency jurisdiction under section 300 is said to be taken over the *child*, not *the parents*, as a result of the harm or risk of harm the child faces. (See, e.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 310.) Because the juvenile court assumes jurisdiction over the child, not over the parents, jurisdiction may exist based on the conduct of one parent alone. (See § 302, subd. (a); *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been

found to be supported by the evidence." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

However, we may exercise our discretion and reach the merits of a single parent's challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 454), (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (see, e.g., *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; see also, *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1494), or (3) "could have other consequences for [the appellant], beyond jurisdiction." (*In re I.A.*, *supra*, at p. 1493.)

Mother argues we should exercise our discretion to reach the merits of her appeal because there is a societal stigma attached to mental health disorders, which could impact her ability to obtain future employment as a health care provider if the finding stands. We agree the juvenile court's finding on count b-3 could have far reaching consequences, and exercise our discretion to reach the merits of Mother's appeal.

## B. Substantial Evidence Does Not Support Assertion of Dependency Jurisdiction Under Count B-3

### 1. *Standard of Review*

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) Under this standard, " 'we must uphold the . . . [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we

10

determine there is no substantial evidence to support [them].' " (*Ibid.*)

2.     *Section 300, subdivision (b)(1)*

Section 300, subdivision (b)(1) allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

3.     *Analysis*

Mother argues that nothing in the record supports the juvenile court's jurisdictional finding on count b-3 that her mental health condition caused the children to be at substantial risk of serious physical harm or illness.

A valid jurisdictional finding under section 300, subdivision (b)(1) requires the Department to demonstrate the following three elements by a preponderance of the evidence: (1) neglectful conduct, failure, or inability; (2) causation; and (3) serious physical harm or illness suffered by the minor, or a substantial risk of serious harm or illness. (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561.)

The juvenile court found the allegations contained in count b-3 to be true. Those findings are that (1) Mother has mental and emotional problems, (2) Mother failed to take prescribed psychotropic medication, (3) Mother failed to consistently participate in mental health treatment, and (4) "[s]uch mental

11

and emotional problems . . . endangers the children's physical health and safety."

Despite Mother's history of mental illness and dangerous behavior, none of the findings establishes a *causal relationship* between her mental illness and a substantial risk of serious physical or emotional harm to the children. The applicable law is well settled. "If it is alleged the child comes under the juvenile court's jurisdiction under this subdivision due to the parent's mental illness resulting in the parent being unable to provide regular care for the child, it is not sufficient to show merely that the parent suffers from a mental illness. Instead, the social services agency must show how the child has been or will be harmed as a result of the parent's mental illness." (Seiser & Kumli, 1 Cal. Juvenile Courts Practice & Procedure (2020) § 2.84, citing *In re A.G.* (2013) 220 Cal.App.4th 675, 684-685, *In re David M.* (2005) 134 Cal.App.4th 822, 830 and *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318; see also *In re A.L.* (2017) 18 Cal.App.5th 1044, 1050 ["the law is settled that harm may not be presumed from the mere fact of a parent's mental illness"].)

Nor does the juvenile court's oral ruling reveal what evidence of causation it relied upon in sustaining count b-3. The court stated that it "understands there has been some follow-up. However, there is information in the report about Mother not being consistent regarding her treatment. And given the various concerns regarding Mother's inability to regulate her behavior or emotions, the court based on the totality of the facts on the record there is a likelihood that this remains an issue that places the children at substantial risk, and its likely to occur given that there has not been a pattern of receiving ongoing care to appropriately address the concerns in [count] b-3. Rather, there's

been breaks in treatment.  So given the history of breaks in treatment and lag of appropriately resolving these issues, the court finds that the Department has met its burden as to [count] b-3."

Not only does count b-3 fail to establish causation, two of the allegations made against Mother in count b-3 find no support in the record.

As to the allegation that Mother failed to take "psychotropic medication as prescribed," there is no evidence in the record to support a finding that Mother was prescribed psychotropic medication at the time of the hearing.  The allegation that she "failed to consistently participate in mental health treatment," is contradicted by the record.  In its August 26, 2020, last minute information, the Department reported:  "It remains unknown to the Department whether or not [M]other needs the support of a psychiatrist and/or medication, to sustain her mental health."  Moreover, in its August 27, 2020, combined jurisdiction/disposition report, the Department concluded:  "Clearly[, M]other demonstrated a lapse in judgment on 06/21/2020, when she had the child, [K.L.], outside after midnight while searching for the father following an argument.  The Department has no reason to know that this is typical behavior for [M]other.  The family has had minimal contact with [the Department], as this is their first [d]ependency case."

The Department's arguments in support of the juvenile court's findings in count b-3 are unpersuasive.  First, the Department contends "[M]other's very long history of battling her unresolved mental and emotional problems creating future substantial risk of harm to the children were well supported by

the record."  Second, the Department maintains that "[g]iven [M]other's inability to control her behavior combined with her poor and reckless decision-making, the juvenile court did not have to wait until the children were harmed before exercising jurisdiction."

We reject these arguments because neither addresses the fatal defect in count b-3:  the absence of a causal relationship between [M]other's mental health condition and a substantial risk of serious physical or emotional harm to the children.  To be clear, Mother displayed an extreme inability to control herself during her tirades directed at K.L. Sr. in the presence of her children.  In the most recent incident, she (1) drove erratically at high speeds, (2) attacked a neighbor's car, which (3) caused the neighbor to attack mother's car, which, in turn, (4) caused a car chase to ensue, all the while with Mother's infant son in the vehicle.  This conduct displays a complete inability to control her behavior in the presence of her children and is a textbook instance in which the state must act in order to protect those too small and helpless to defend themselves.  Mother does not contest that dependency jurisdiction was properly asserted under counts a-1, b-1, and b-2, and as we explain below, the corresponding removal order is supported by substantial evidence.  Mother also does not challenge the services ordered on removal, and we note that those services include individual therapy.  That said, the trial court erroneously sustained count b-3 because the record contains no evidence establishing that Mother's admitted history of mental illness played any role in this behavior.  As a result, the jurisdictional finding made in count b-3 is not supported by substantial evidence for wont of evidence of causation.

14

Finally, the Department relies on *In re Travis C.* (2017) 13 Cal.App.5th 1219 (*Travis C.*). There, the mother failed to consistently take prescribed medication. (*Id.* at p. 1222.) The mother's psychiatrist reported he would be concerned for the children's safety if the mother was not medicated. Moreover, the mother threatened suicide in the children's presence. (*Id.* at p. 1226.) Given these facts, the court concluded: "[The Department's] inability to precisely predict how [the m]other's illness will harm [the children] does not defeat jurisdiction. [The m]other's illness and her failure to consistently treat it have already put [the children] into situations where they were at a substantial risk of serious physical harm." (*Id.* at p. 1226.) The Department concludes that here, as in *Travis C.*, "[M]other did not consistently follow any treatment regimen and stopped taking her medications."

The Department's reliance on *Travis C.* is misplaced. Unlike the mother in *Travis C.*, Mother was not *refusing* prescribed medications; there was no evidence to indicate that she was even subject to an existing prescription for medication. Moreover, unlike *Travis C.*, no psychiatrist or other mental health professional reported that they would be concerned about leaving the children in Mother's care *as a result of* her mental health conditions. This causal link, present in *Travis C.*, is absent here. While Mother's erratic and volatile outbursts demonstrate extremely poor judgment and may be linked to a mental illness, the record does not substantiate this conclusion. To the contrary, the conclusion that Mother's history of mental illness created a substantial risk of serious physical harm to the children is based on little more than speculation. (See *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 ["inferences that

15

are the result of mere speculation or conjecture cannot support a finding" of substantial evidence in favor of dependency jurisdiction (italics omitted)]; see also *In re A.L., supra,* 18 Cal.App.5th at p. 1051 [reversing assertion of § 300, subd. (b)(1), jurisdiction predicated upon the mother's diagnosis of schizophrenia where the only evidence of harm to the child and causation was one episode of mania caused by the mother's failure to take medication prescribed for her schizophrenia].)

We thus conclude substantial evidence does not support the juvenile court's jurisdictional findings in count b-3.

## C.  Substantial Evidence Supports the Juvenile Court's Dispositional Order

### 1.  *Standard of Review and Applicable Law*

After declaring a child a dependent of the juvenile court, the court must determine whether the child may remain with the custodial parent or whether the child must be removed from the home.  (§ 361, subd. (c).)  To remove a child from parental custody, the juvenile court must find by clear and convincing evidence that one of five grounds exists pursuant to section 361, subdivision (c).  (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)  Of relevance here, "[o]ne ground for removal is that there is a substantial risk of injury to the child's physical health, safety, protection or emotional well-being if he or she were returned home, and there are no reasonable means to protect the child." (*Ibid.*, citing § 361, subd. (c)(1).)

"A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent.  [Citation.]  'The parent need not be dangerous and the minor need not have been actually harmed before removal is

16

appropriate.  The focus of the statute is on averting harm to the child.'  [Citation.]"  (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

The clear and convincing evidence standard " 'requires a finding of high probability.  The evidence must be so clear as to leave no substantial doubt.' "  (*In re V.L., supra,* 54 Cal.App.5th at p. 154.)  " '[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.  Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.' "  (*Id.* at p. 155 [applying the standard of review articulated in conservatorship matters to a dependency proceeding], quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

2.    *Analysis*

Mother's challenge to the removal order consists of highlighting her commendable progress in court-ordered programs.  These arguments miss the mark, however, since they are quarrels with how the juvenile court weighed conflicting evidence, and we must reject those arguments if substantial evidence supports the ruling.  (See *In re James R.* (2009) 176 Cal.App.4th 129, 135 ["We do not pass on the credibility of

17

witnesses, attempt to resolve conflicts in the evidence or weigh the evidence."].)

The removal order is supported by the juvenile court's jurisdictional findings as to counts a-1, b-1, and b-2. Those findings are that Mother recklessly drove her vehicle at high speeds when the infant K.L. was in the vehicle during an argument with K.L. Sr.; broke a neighbor's car window with an unknown object; engaged in a high-speed vehicle chase in an effort to flee from that neighbor, with the child still in the car; struck K.L. Sr. with a crowbar, a bat, a Taser, and pepper-spray; and attempted to hit K.L. Sr. with her vehicle.

Mother contests none of those findings, and they provide substantial evidence from which a reasonable fact finder could have found it highly probable that there was a substantial risk of injury to the children's health if they were released to Mother, due to the severity and volatility of the numerous episodes of domestic abuse she engaged in.

Mother contends the Department did not engage in "reasonable efforts" to prevent removal. Before ordering removal, section 361, subdivision (e) requires the juvenile court to "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home."

In addressing "reasonable efforts" in its August 27, 2020, jurisdictional and dispositional report, the Department noted that it had provided referrals to community resources, made requests for information from mental health providers, obtained drug test results, prepared a detention hearing report, and conducted interviews.

18

Mother suggests the children could have been released to her care on the condition that she live with the maternal grandmother and a further condition that she not take the children out of the home unsupervised.  However, when it was suggested that the children be released to the maternal grandmother at the Child Family Team Meeting approximately six weeks prior to the dispositional hearing, Mother refused to cooperate with this safety plan and objected to anyone telling her what she could or could not do with the children.

Furthermore, the maternal grandmother was ill-equipped to protect the children from mother's behavior.  When interviewed by the CSW, the grandmother stated, "I don't want anything getting back that I said anything.  I'm not going to say anything against my daughter.  I'm going to protect my family."  Based on this statement, the juvenile court observed, "there are concerns about whether living with [the] maternal grandmother would be an appropriate safety mechanism [to allow for] releasing the kids [to] the home of the grandmother."

The juvenile court's finding is supported by Mother's stated refusal to accept supervision or restrictions on her ability to take the children from the grandmother's home, in combination with the maternal grandmother's apparent reluctance to comply with Department directives.  Thus, substantial evidence supports the court's conclusion that reasonable efforts had been made to prevent removal.

## DISPOSITION

The juvenile court's jurisdictional findings as to count b-3 of the sustained section 300 petition are vacated.  In all other respects, the jurisdictional and dispositional order is affirmed.

NOT TO BE PUBLISHED

FEDERMAN, J.*

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

---

*  Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.