Filed 7/28/21  In re Jaiden C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re JAIDEN C., a Person Coming Under the Juvenile Court Law. | B309544 (Los Angeles County Super. Ct. No. 20LJJP00149A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. STEFANI D., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Juvenile Court Referee. Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Stefani D. (mother) appeals from the juvenile court's custody order granting sole legal and physical custody over her son, Jaiden C. (born 2018), to Jaiden's father, Jordan C. (father), after the court terminated dependency jurisdiction over Jaiden.  We affirm the order.

## BACKGROUND

**Detention and Welfare and Institutions Code section 300 petition**

The Los Angeles County Department of Children and Family Services (the Department) received a referral on March 1, 2020, alleging physical abuse of Jaiden by mother.  Los Angeles County Sheriff's Department deputies responded to a 911 call reporting that mother had thrown Jaiden against a wall.

The deputies told the Department's social worker that when they arrived at the home, maternal aunt Moraya P. reported that she had heard her one-year-old nephew Jaiden crying and went to mother's bedroom to check on the child. Mother repeatedly yelled at Jaiden to "[s]hut the fuck up!"  She then grabbed Jaiden by the shirt and tossed him against the bedroom wall.  Moraya saw Jaiden's head hit the wall.  The child landed upside down and then vomited.  Moraya attempted to take Jaiden from mother and began arguing with mother about

2

the child's safety. Maternal aunt Danielle R. then entered the room and removed Jaiden.

Danielle R. told the deputies that before the incident, she saw mother grab Jaiden by the arm and pull him upstairs while the child was crying. She said mother often "manhandl[es]" Jaiden and yells profanities at him. Shortly after mother went upstairs, Danielle heard mother and Moraya arguing. Danielle then went upstairs and removed Jaiden from the room. Danielle reported that mother suffers from bipolar disorder, depression, and ADHD, and does not take her prescribed medication.

Jaiden was transported to the hospital for medical attention. A forensic nurse examining Jaiden pointed out bruising on Jaiden's right eye; however, X-rays and a CT scan revealed no injuries. Jaiden was diagnosed with a contusion to the forehead and discharged.

Moraya told the social worker that mother and father shared custody of Jaiden and alternated weekly visits. Mother was supposed to exchange custody of Jaiden with father on the day of the incident, but she returned home with Jaiden and appeared visibly upset. Moraya heard Jaiden crying and mother yelling at him and entered mother's bedroom to check on the child. Mother repeatedly screamed at Jaiden to "[s]hut the fuck up." Mother then placed both hands under the child and "flipped Jaiden into the air." Jaiden somersaulted in the air and hit his head against the bedroom wall. When Moraya sat Jaiden up, the child vomited. Moraya attempted to remove Jaiden from mother and began arguing with her about Jaiden's safety. Danielle then entered the room and removed Jaiden.

Moraya told the social worker that mother is agitated much of the time, frequently yells at Jaiden, and often grabs him by the

3

arm and forces him to follow her. Moraya recounted another incident that had occurred the previous month when mother hit Jaiden with a pillow.

Moraya expressed concern for Jaiden's safety because of mother's mental health issues and frequent marijuana use. She said mother had been diagnosed with bipolar disorder, depression, and ADHD and was not compliant with her medication. Moraya reported that mother smoked marijuana at least 10 times a day. Moraya said she had no concerns about Jaiden's safety with father.

Danielle told the social worker that on March 1, 2020, Jaiden was crying, and mother was yelling at him to "shut up." Danielle picked Jaiden up to comfort him, but mother became upset and shouted, "Stop that, that is why he's like this." Mother then grabbed Jaiden by the arm and dragged him upstairs to her bedroom. Danielle noted that mother often pulls and drags Jaiden around the house. After mother took Jaiden upstairs, the child continued to cry, and mother continued to scream at him. Mother walked in and out of her bedroom several times, slamming the door shut each time she exited the room. Danielle went upstairs to check on Jaiden and saw Moraya attempting to take Jaiden from mother. Danielle entered mother's bedroom and removed Jaiden. Mother became "manic" and yelled at everyone. The maternal grandmother then intervened and told mother to leave the home.

Danielle also expressed concern for Jaiden's safety. She reported that approximately one month prior, mother became frustrated with Jaiden's crying and used a neck pillow to hit the child several times. When confronted, mother initially denied hitting Jaiden. She later admitted doing so but said she did not

4

hit him very hard.  Danielle reported that mother smoked marijuana but did not appear to be using any other drugs.  Danielle said she had no concerns about Jaiden's safety with father.

The maternal grandmother told the social worker that she went to mother's bedroom when she heard mother and Moraya arguing.  Moraya told the maternal grandmother that mother had thrown Jaiden against the wall.  Mother initially claimed she threw Jaiden onto the bed.  When Moraya accused mother of lying, mother then stated, "I didn't throw him that hard."  The maternal grandmother told mother that she needed to treat her mental health issues, because mother was too rough with Jaiden.  She then asked mother to leave the home and would not allow mother to take Jaiden out of the home.

Mother told the social worker that she did not know why she had been arrested.  She then gave several different versions of the March 1, 2020 incident.  Mother first stated that Jaiden was having a tantrum and that she "popped" him on the thigh with an open hand to calm him down.  Jaiden continued to cry and then threw up on the bed sheets.  Mother lifted the sheets off the bed while Jaiden was lying on them, and the child rolled against the wall but did not hit the wall.  Mother accused Moraya, who entered the room as mother was removing the sheets, of exaggerating.  Mother told the social worker:  "I did not hurt him.  I'm gonna have his dad keep him.  I don't have the patience."  Mother said she could not handle Jaiden's screaming.  "I can't do it.  I want his dad to take him.  I don't want to hurt him."

Mother then changed her account of the incident.  She told the social worker that Jaiden was lying face up on the bed and

that mother had grabbed him by the leg to pull him closer to her when Moraya entered the room.

Mother then gave a third version of the incident, stating she was changing the bedsheets because Jaiden had urinated on them. According to mother, she was removing the bedsheets while Jaiden was lying on them at the time Moraya entered the room.

When the social worker asked mother about the incident with the neck pillow, mother appeared annoyed and said the pillow was soft. Mother then admitted hitting Jaiden with the pillow because he was crying and would not stop. Mother said she had been diagnosed with bipolar disorder, depression, and ADHD. She said she did not take any medication but saw a therapist "here and there" as needed. Mother admitted smoking marijuana daily but claimed she did so only while Jaiden was asleep.

The social worker conducted an in-person interview with father, who denied any history of domestic violence or mental health issues. Father said he had a 2014 arrest for marijuana possession that was subsequently expunged. He admitted to current marijuana use but said he was trying to stop.

Father told the social worker that he was surprised to learn that mother had physically abused Jaiden because he had never witnessed any prior abuse by mother. Father stated he was willing and able to care for Jaiden.

The Department filed a petition on Jaiden's behalf under Welfare and Institutions Code[1] section 300, subdivisions (a) and

---

[1] All further statutory references are to the Welfare and Institutions Code.

(b), alleging that mother had physically abused Jaiden by throwing him against a wall, causing the child to strike his chest and forehead against the wall and vomit. The petition further alleged that on prior occasions, mother struck Jaiden on the thigh with her hand, hit him with a pillow, pulled on his arm, and dragged him around. The petition alleged that mother's physical abuse, mental and emotional problems, and current abuse of marijuana endangered Jaiden's physical health, safety, and well-being; created a detrimental home environment; and placed Jaiden at risk of serious physical harm.

Mother and father were both present at the March 4, 2020 detention hearing at which the juvenile court found father to be Jaiden's presumed father. The court ordered Jaiden detained from mother and released to father and accorded mother monitored visits three times a week for three hours per visit.

**Jurisdiction and disposition**

In its April 2020 jurisdiction/disposition report, the Department informed the juvenile court that it had made several unsuccessful attempts to contact mother.

Father told the dependency investigator during an April 16, 2020 interview that he was conflicted about the abuse allegations against mother. He had never seen mother verbally or physically abuse Jaiden, and the child always seemed happy to leave with mother during custody exchanges.

Moraya informed the dependency investigator that she had been subpoenaed as a witness in a criminal case against mother as a result of the March 1, 2020 incident. The dependency investigator confirmed that a felony child abuse case had been filed against mother and that a criminal protective order had been issued protecting Jaiden from mother.

7

Moraya told the investigator about another incident that had occurred in the past while the family was dining out. Mother took Jaiden repeatedly to the restroom to spank him because he was fussy and crying. A bystander came to the family's table and asked whether mother was abusing Jaiden.

Danielle told the dependency investigator during an April 15, 2020 interview that mother frequently yelled at Jaiden and called him names. Danielle reported that her own child had seen mother pin Jaiden down in his crib and hit him repeatedly with a neck pillow.

The maternal grandmother stated that mother had been verbally aggressive toward Jaiden since his birth and that mother often screams at the child and calls him names. The maternal grandmother said she encouraged mother to enroll in a parenting program and offered to pay for the program, but mother had refused.

The maternal grandmother, Danielle, and Moraya all reported that mother had struggled with mental health issues for many years, had been diagnosed with bipolar disorder, and had been prescribed psychotropic medication. Mother did not take the medication because she did not like the way it made her feel and said she preferred to self-medicate with marijuana. The maternal grandmother, Danielle, and Moraya confirmed that mother uses marijuana. Danielle and Moraya reported that mother smoked marijuana while caring for Jaiden. Jaiden's medical records indicated that he suffers from asthma and uses an inhaler as needed.

A last minute information for the court dated November 20, 2020, included a copy of a March 3, 2020 criminal protective order protecting Jaiden from mother. The protective order stated

that mother could have peaceful contact with Jaiden if allowed under any subsequently issued family, juvenile, or probate court order.

The Department recommended that the juvenile court terminate jurisdiction, noting that Jaiden had been in father's care, with no concerns, since inception of the case. The Department further noted that mother had no stable housing and that her transient lifestyle could be detrimental to Jaiden's well-being.

Both parents were present at the December 2, 2020 adjudication hearing, at which the juvenile court sustained the allegations of the section 300 petition[2] and ordered Jaiden

---

[2]     The sustained allegations state: "The child Jaiden [C.]'s mother, Stefani [D.], physically abused the child by grabbing the child's shirt and throwing the child against the wall causing the child's forehead and chest to hit the wall causing the child to vomit. The mother struck the child's thigh with the mother's hand. On a prior occasion, the mother struck the child with a pillow. On prior occasions, the mother pulled the child's arm. On prior occasions, the mother dragged the child. Such physical abuse was excessive and caused the child unreasonable pain and suffering. The physical abuse of the child by the mother endangers the child's physical health, safety and well-being, creates a detrimental home environment and places the child at risk of serious physical harm, damage, physical abuse and failure to protect." (Counts a-1 and b-1.)

"The child Jaiden [C.]'s mother, Stefani [D.], has mental and emotional problems, including a diagnosis of Bipolar Disorder, Depression and ADHD, which renders the mother incapable of providing regular care for the child. On prior occasions, the mother failed to take the mother's psychotropic medication as prescribed and failed to consistently participate in mental health services. Such mental and emotional problems on

9

removed from mother's custody and placed with father under the Department's supervision.

**Termination of jurisdiction and custody order**

On December 7, 2020, the juvenile court terminated jurisdiction over Jaiden and issued a custody order granting father full physical and legal custody over Jaiden. The order accords mother monitored visits three times a week for three hours.

This appeal followed.

## DISCUSSION

### I. Applicable law and standard of review

"When the juvenile court terminates its jurisdiction over a dependent child, section 362.4[3] authorizes it to make custody

---

the part of the mother endangers the child's physical health and safety and places the child at risk of serious physical harm, damage, and danger." (Count b-2.)

"The child Jaiden [C.]'s mother, Stefani [D.], has a history of substance abuse and is a current abuser of marijuana, which renders the mother incapable of providing regular care and supervision of the child. On prior occasions, the mother possessed, used, and was under the influence of marijuana while the child was in the mother's care and supervision. The child is of such a young age as to require constant care and supervision and the mother's substance abuse interferes with providing regular care and supervision of the child. The mother's substance abuse endangers the child's physical health and safety, creates a detrimental home environment, and places the child at risk of serious physical harm, damage, and danger." (Count b-3.)

3 Section 362.4 states in relevant part: "If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's

10

and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court." (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30.) "When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)

We review a juvenile court's custody order for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) Under this standard, a reviewing court may not disturb the custody order ""'unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'"" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).)

## II.  No abuse of discretion

The record discloses no abuse of discretion by the juvenile court. While Jaiden was in mother's care, mother was verbally and emotionally abusive toward him, frequently screaming and swearing at him and calling him names. Mother also physically abused Jaiden, hitting him repeatedly with a pillow when he would not stop crying, dragging him by the arm around the house, and striking him on the thigh with her hand. A maternal aunt saw mother throw Jaiden against a bedroom wall, resulting

---

attainment of the age of 18 years, and . . . an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child. [¶] . . . Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court. . . ." (§ 362.4, subds. (a), (b).)

11

in a contusion to Jaiden's forehead and bruising to his eye, a criminal child abuse case against mother, and a protective order prohibiting mother from having contact with Jaiden unless authorized by a subsequent court order.

Mother had unresolved mental health issues and refused to take her prescribed psychotropic medication. (See *In re Travis C.* (2017) 13 Cal.App.5th 1219, 1226-1227 [mother's choice to not consistently treat her mental illness placed children at substantial risk of serious physical harm].) Mother also abused marijuana while caring for Jaiden. Her substance abuse presumptively places Jaiden, a child of tender years, at substantial risk of serious physical harm. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766 [parent's substance abuse is prima facie evidence of substantial risk to children of tender years who require adequate supervision].) Finally, mother told the Department's social worker that she did not want Jaiden and preferred to have father care for him.

Mother does not challenge the order granting father sole physical custody of Jaiden, nor does she challenge the juvenile court's jurisdictional findings. Those findings, and the evidence supporting them, also support the juvenile court's finding that mother should not be granted joint legal custody allowing her to make decisions concerning Jaiden's health, education, and welfare.

Mother's claim that the "totality of the circumstances" show it was not in Jaiden's best interests to grant father sole legal custody amounts to a request that we reweigh the evidence in her favor. We have no authority to do so, and we cannot substitute our judgment for that of the juvenile court. (*Stephanie M., supra,* 7 Cal.4th at pp. 318-319.)

12

## DISPOSITION

The order according father sole legal and physical custody of Jaiden is affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.