Filed 8/24/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re TRAVIS C. et al., Persons Coming Under the Juvenile Court Law. | B276877 (Los Angeles County Super. Ct. No. DK16101) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALLISON S.,<br><br>    Defendant and Appellant;<br><br>J.C.,<br><br>    Defendant and Respondent. | ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

IT IS ORDERED that the opinion filed herein on August 2, 2017, be modified as follows:

On page 11, the paragraph after the heading "DCFS's Cross-Appeal" is deleted and the following paragraph is inserted in its place:

Our resolution of Mother's appeal renders DCFS's cross-appeal moot. (*In re I.A., supra*, 201 Cal.App.4th at p. 1492; see *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876; *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.) The cross-appeal is dismissed.

This modification does not change the judgment.

CERTIFIED FOR PUBLICATION.

_____

CHANEY, Acting P. J.          JOHNSON, J.          LUI, J.

Filed 8/2/17 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re TRAVIS C. et al., Persons Coming Under the Juvenile Court Law. | B276877 (Los Angeles County Super. Ct. No. DK16101) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALLISON S., <br><br> Defendant and Appellant; <br><br> J.C., <br><br> Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry T. Truong, Commissioner. Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Respondent.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Allison S. (Mother) appeals from the juvenile court's order declaring her children dependents of the court under Welfare and Institutions Code section 300, subdivision (b)(1).[1]  Mother contends substantial evidence does not support the court's jurisdictional findings.  The Los Angeles County Department of Children and Family Services (DCFS) cross-appeals, arguing substantial evidence does not support the court's amendments to the allegations in the petition.  DCFS also moves to dismiss Mother's appeal as moot because Mother did not appeal from a subsequent order sustaining a section 387 petition DCFS argues provides an alternative basis for jurisdiction.  We deny DCFS's motion to dismiss, affirm the court's order sustaining the section 300 petition as amended, and dismiss DCFS's cross-appeal.

## BACKGROUND

**Factual Background**

Mother and J.C. (Father) had two children together, Travis in 2007 and Samantha in 2008.  Mother and Father permanently separated in 2010, and Mother had custody of Travis and Samantha after the separation.  Mother and the children lived

_____

[1] All statutory references are to the Welfare and Institutions Code.

2

with Mother's parents, even though Mother had a strained relationship with her parents.

In September 2015, Mother began having serious mental health problems, including psychotic episodes. Mother's condition caused her to become delusional and paranoid and act in ways that scared the children. Mother's condition made her hear voices, believe she was being stalked, believe law enforcement was following her, believe the children were being manipulated by the government, and believe she had implants in her brain, among other delusions, and she was open with the children about her mental illness. Mother's psychotic episodes manifested themselves in various ways. At times, she became angry. At least once, Mother became suicidal and was later hospitalized.

Mother sought treatment for her condition, but did not consistently follow any treatment regimen. She checked into a treatment center, but checked out, citing a disagreement with the facility over her treatment. Mother was also treated by a psychiatrist, who prescribed various medications. The medications gradually improved Mother's condition. But she repeatedly stopped taking her medications for various lengths of time and various reasons.

Before she was medicated, before her condition became more stable, and when she went off her medication, Mother's parents—particularly the maternal grandmother—stepped in as Travis and Samantha's primary caregivers. The maternal grandmother prepared the children's meals, helped them with school projects, and readied them for bed. When Mother threatened suicide, the maternal grandmother removed the children from the home for the night. And the maternal

grandparents confiscated Mother's keys when they believed she could not drive.

The maternal grandparents' interventions mitigated, but could not eliminate, the effects of Mother's illness and treatment decisions on Travis and Samantha. The maternal grandparents sought but were never granted temporary legal guardianship of Travis and Samantha. And even after Mother's medication stabilized her condition, she threatened to leave the maternal grandparents' home and take Travis and Samantha. Mother continued to drive alone with the children in the car, including when she was experiencing symptoms of her illness.

Mother's psychiatrist reported that he was not concerned with the children's safety as long as the maternal grandmother was caring for them and as long as Mother stayed on her medication. If Mother were to be off her medication or if the maternal grandmother were not involved, however, he said he would have concerns.

Mother also had a history of substance abuse. Before she was pregnant with Travis, Mother used methamphetamine, cocaine, and marijuana. Mother continued to use marijuana daily.

For his part, Father regularly visited Travis and Samantha at the maternal grandparents' home and frequently kept them on weekends. Father alternately lived with his parents and his girlfriend's parents. Father's income fluctuated, but he voluntarily assisted with the children's financial support. He was regularly in their lives, but Father was unaware of the extent of Mother's condition or its effects on Travis and Samantha.

**Procedural Background**

DCFS began investigating Travis and Samantha's situation on February 10, 2016. On March 11, the juvenile court ordered Travis and Samantha detained, and DCFS detained and released them to the maternal grandparents on March 15.

**A.** **Section 300 Petition and Detention Hearing**

DCFS filed the section 300 petition on March 18, 2016, alleging the juvenile court had jurisdiction over Travis and Samantha under subdivision (b)(1). The petition alleged a substantial risk Travis and Samantha would suffer serious physical harm or illness because of Mother's inability to adequately supervise or protect them, Father's failure to protect the children from Mother, and Mother's inability to regularly care for them as a result of her mental illness and substance abuse. The petition also contained two paragraphs of facts supporting the jurisdictional allegations; one detailed Mother's mental illness and Father's failure to protect the children from it (par. b-1), and the other detailed Mother's substance abuse (par. b-2).

At the detention hearing, the juvenile court—over DCFS's objection—released Travis and Samantha to Father on the condition they remain with the maternal grandmother.

**B.** **Jurisdiction and Disposition Hearing**

The court presided over the combined jurisdiction and disposition hearing on June 10, 2016.

As filed, the petition's paragraph b-1 stated: "The children Travis C[.] and Samantha C[.]'s mother, Allison S[.], has mental and emotional problems including a diagnosis of Schizoaffective Disorder, visual and auditory hallucination, delusions, suicidal ideation and paranoia, which render the mother incapable of providing regular care of the child. The mother failed to take the

mother's psychotropic medication as prescribed. The children's father, J[.]C[.], knew of the mother's mental and emotional problems and failed to protect the children. Such mental and emotional problems on the part of the mother and the father's failure to protect the children endanger the children's physical health and safety and place the children at risk of serious physical harm, damage, danger and failure to protect."

The court amended paragraph b-1 by striking all allegations about Father and changing the end of the paragraph to state: "The mother failed to consistently take the mother's psychotropic medication as prescribed. Such mental and emotional problems on the part of the mother endangers the children's physical health and safety and places the children at risk of harm." The court struck paragraph b-2 entirely.

After sustaining the petition as amended, the court declared Travis and Samantha dependents of the court and placed them with Mother and Father on the condition that the children reside in the maternal grandparents' home.

Mother filed this appeal the same day.[2] DCFS cross-appealed on August 23, 2016.

---

[2] Jurisdictional findings under section 300 are not appealable, but are reviewable on appeal from a dispositional order. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393, fn. 8.)

C.    **Subsequent Proceedings**[3]

DCFS filed a section 387 supplemental petition (requesting the court to remove the children from Mother's custody) in January 2017, alleging additional facts about Mother's mental health.  At the detention hearing on the section 387 petition on January 18, the court detained the children, removed them from Mother, and released them to Father.  The court adjudicated the section 387 petition on March 7, 2017, placing the children in Father's custody.  After the time expired for an appeal from the court's order on the section 387 petition, DCFS moved to dismiss Mother's appeal.

## DISCUSSION

**DCFS's Motion to Dismiss Appeal**

DCFS moved to dismiss Mother's appeal as moot, arguing the juvenile court's orders on the section 387 petition vested the juvenile court with jurisdiction independent of the section 300 petition.  DCFS correctly points out that we need only find substantial evidence to support any one statutory basis for jurisdiction to affirm the court's jurisdictional finding.  (See, e.g., *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

---

[3] The information in this section comes from exhibits attached to two DCFS motions to take judicial notice of post-judgment proceedings.  We consider the information in the context of DCFS's motion to dismiss, but not in the context of our review of the trial court's jurisdictional findings.  An "appellate court reviews the correctness of a judgment as of the time it is rendered, based on the evidence that was before the trial court for consideration at that time."  (*In re V.M.* (2010) 191 Cal.App.4th 245, 254, fn. 1.)  "This is not one of those rare cases presenting unusual, compelling new circumstances that would justify this court taking additional evidence."  (*Ibid.*)

7

Because there was no appeal from the order adjudicating the section 387 petition, DCFS argues, the juvenile court had jurisdiction regardless of the section 300 petition. DCFS cites *In re A.B.* (2014) 225 Cal.App.4th 1358, 1363-1364, in which we concluded that jurisdictional findings on a section 342 petition mooted an appeal from jurisdictional findings based on an earlier section 300 petition.

*In re A.B., supra*, 225 Cal.App.4th 1358 does not apply here. Section 342 requires the trial court to determine whether newly-alleged facts or circumstances establish jurisdiction independent of facts alleged in the section 300 petition. By contrast, a "necessary prerequisite to file a section 387 modification petition is jurisdiction over the children." (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 203.) A "section 387 supplemental petition does not affect the jurisdiction of the court." (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1077.)

If the court was without jurisdiction to rule on the section 300 petition, it was also without jurisdiction to consider the section 387 petition. We must decide, therefore, whether the court's jurisdictional findings on the section 300 petition were in error. DCFS's motion to dismiss is denied.

**Mother's Jurisdictional Challenge**

Mother contends there is insufficient evidence to support the juvenile court's determination that Travis and Samantha are persons described by section 300, subdivision (b)(1). That subdivision brings a child within the court's jurisdiction when the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" under various circumstances not in question here. (§ 300, subd. (b)(1).) There

are three elements to jurisdiction under section 300: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

"We review the trial court's findings for substantial evidence. [Citation.] We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.] The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence. [Citation.] [¶] Substantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value. [Citation.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Mother first contends the court's amendment of the supporting facts in the petition was a determination that Mother's condition did not create a substantial risk that Travis and Samantha would suffer "serious physical harm or illness," as section 300, subdivision (b)(1) requires. We disagree. The petition contained *both* jurisdictional allegations (the court did not amend) tracking the statutory language *and* the supporting facts the court amended. The court sustained the petition with the jurisdictional allegations intact.

Mother also argues the risk of the children suffering serious physical harm or illness was speculative. "Harm to a

9

child cannot be presumed from the mere fact the parent has a mental illness." (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1079.)

The court did not, however, presume harm to Travis and Samantha merely because Mother has a mental illness. The court was instead concerned with Mother's choice to not consistently treat her illness. Mother's psychiatrist reported that he would be concerned for Travis and Samantha's safety because of Mother's mental condition *if Mother were not medicated*.

After she began taking medication, but before her condition had stabilized, Mother threatened suicide while the children were present. Mother's parents removed the children from the home when Mother threatened suicide and took Mother's keys away when they believed she was not able to drive. Mother's parents mitigated the risks as best they were able, but Mother continued to go unmedicated at times, continued to experience severe episodes related to her illness, and continued to drive alone with Travis and Samantha in the car, even while she was experiencing the effects of her illness.

Mother's argument focuses on a lack of any specific identified harm Mother's illness and choices risk causing Travis and Samantha. Mother analogizes this case to *In re David M.* (2005) 134 Cal.App.4th 822, where the court found the risk of harm speculative. The Court of Appeal explained, "David was healthy, well cared for, and loved, and that mother and father were raising him in a clean, tidy home." (*Id.* at p. 830.) There was no evidence in that case that the identified problems impacted the parents' ability to care for their child or to provide a decent home for him. (*Ibid.*) There was no substantial risk of *any* future harm identified. (*Ibid.*)

DCFS's inability to precisely predict how Mother's illness will harm Travis and Samantha does not defeat jurisdiction. Mother's illness and her failure to consistently treat it have already put Travis and Samantha into situations where they were at a substantial risk of serious physical harm. It is not necessary for DCFS or the juvenile court to precisely predict *what* harm will come to Travis and Samantha because Mother has failed to consistently treat her illness. Rather, it is sufficient that Mother's illness and choices create a substantial risk of *some* serious physical harm or illness.

Substantial evidence supports the juvenile court's jurisdictional findings.

**DCFS's Cross-Appeal**

The juvenile court issued its dispositional order on the section 300 petition on June 10, 2016. The court served notice of Mother's appeal on June 16. DCFS filed its notice of appeal from the same order on August 23. Because August 23 was more than 60 days after June 10 and more than 20 days after June 16, DCFS's cross-appeal was untimely. (Cal. Rules of Court, rule 8.406(a)(1), (b).)

## DISPOSITION

We deny DCFS's motion to dismiss the appeal and affirm the juvenile court's jurisdictional findings. DCFS's cross-appeal is dismissed.

CERTIFIED FOR PUBLICATION.


CHANEY, Acting P. J.

We concur:


JOHNSON, J.                    LUI, J.

11