Filed 5/24/23  In re N.V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.V. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>V.E.,<br><br>Defendant and Appellant. | F085442<br><br>(Super. Ct. No. JD142330-00; JD142331-00)<br><br>**OPINION** |

## THE COURT*

APPEAL from orders of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Suzanne M. Nicholson, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, Kern County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*         Before Poochigian, Acting P. J., Franson, J. and Meehan, J.

Appellant V.E. (father) is the father of three-year-old N.V. and one-year-old H.V. (children), who are the subjects of a dependency case. Father challenges the juvenile court's orders issued at a contested Welfare and Institutions Code section 366.26[1] hearing that resulted in father's parental rights being terminated. Father contends the court erred by failing to apply the beneficial parent-child relationship exception and considering inappropriate factors during its determination on the exception.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Initial Removal*

In July 2021, the Kern County Department of Human Services (department) received a referral after D.V. (mother) gave birth to H.V. in an ambulance. A report was made due to concerns that mother was suffering from mental health problems. Mother refused to see H.V., was unaware of her pregnancy, and did not speak coherently. H.V. and mother both tested positive for methamphetamine, but mother denied any drug use. N.V., H.V.'s then one-year-old sibling, was at home with father. Father denied any drug use by either himself or mother, but he admitted to methamphetamine use three weeks earlier. Both children were taken into protective custody with the assistance of law enforcement pursuant to a protective custody warrant.

The department filed original petitions alleging the children were described by section 300, subdivisions (b)(1) and (j). The petitions alleged the children were at substantial risk of suffering serious physical harm as a result of parents' substance abuse and past neglect of N.V. The petitions further alleged that father previously neglected another one of his children, which ultimately resulted in the termination of his parental rights through dependency proceedings.

The report prepared for the detention hearing set forth the reasons for the children's removal from the parents' custody and described the parents' child welfare and

---

[1] All further statutory references are to the Welfare and Institutions Code.

criminal history.  Mother was arrested during the previous month for willful cruelty to a child after N.V. was discovered wandering outside by herself in 105-degree weather. N.V. was found barefoot, disoriented, and suffering from the hot conditions.  A previous referral to the department was substantiated for general neglect due to N.V. testing positive for amphetamine at the time of her birth.  In 2010, one of father's children was taken into protective custody and his parental rights were terminated after he failed to reunify with the child.  Father had three pending criminal cases involving drug charges.

At the detention hearing held on August 2, 2021, father was found to be the presumed father of N.V. and biological father of H.V.  The juvenile court ordered the children detained from mother and father, supervised visits twice per week, and set a combined jurisdiction and disposition hearing for September 28, 2021.

*Jurisdiction and Disposition*

The department's jurisdiction report, dated September 17, 2021, recommended the allegations in the original petitions be found true.  The disposition report, dated September 23, 2021, recommended the children remain in out-of-home care with family reunification services provided to mother and father.  The children were placed together in a resource family home.  Father's previously claimed tribe was determined to be a non-federally recognized tribe.  At the continued jurisdiction and disposition hearing held on November 2, 2021, both parents submitted on the department's recommendation. The juvenile court found the allegations in the petitions true, ordered family reunification services for mother and father, and set a six-month review hearing for May 2, 2022. Father was ordered to participate in counseling for parenting, random drug testing, and substance abuse counseling if he tested positive or missed a test without a valid excuse.

*Family Reunification Period*

In December 2021, and January 2022, mother and father filed petitions pursuant to section 388 requesting the children be returned to their custody on a plan of family maintenance.  The parents alleged that their completion of parenting classes and

consistent visits demonstrated changed circumstances and that placing the children in their custody would be in the best interests of the children. On March 8, 2022, the juvenile court denied the parents' section 388 petitions at the conclusion of an evidentiary hearing.

Both parents were advised to enroll in substance abuse counseling after positive tests for methamphetamine in May 2022. Both parents failed to enroll in substance abuse classes by the time of the six-month review hearing. In June 2022, the children's care provider indicated she was not committed to adoption because she hoped the parents would reunify. At the six-month review hearing on June 28, 2022, the juvenile court terminated mother and father's family reunification services and set a section 366.26 hearing for October 26, 2022.

***Selection and Implementation Hearing***

In October 2022, both parents filed new section 388 petitions requesting the return of the children under a plan of family maintenance or additional reunification services. Father's counsel alleged that he had completed 14 of 20 substance abuse classes, regularly attended "NA" meetings, obtained a sponsor, and recently provided a clean drug test.

The department's section 366.26 report dated October 13, 2022, recommended that the juvenile court terminate mother and father's parental rights and order a permanent plan of adoption for the children. The children were placed in a new resource family home on August 1, 2022, and the care providers were committed to adopting the children. N.V, now three years old, was on target developmentally except in the area of communication. H.V., now one year old, was found to be developing in an age-appropriate manner. No medical or mental health concerns were noted for either child.

The department's report provided descriptions of mother and father's contact with the children during the proceedings. Mother participated in 74 of 120 possible visits

4

since initial removal, and the quality of her visitation was described as "adequate." Father had 80 documented visits with the children out of 120 possible visits since the children's removal. Father interacted appropriately with the children by hugging, kissing, and telling them he loved them. No concerns were noted regarding father's interactions with the children during visitation.

The social worker acknowledged the existence of a relationship between father and N.V. based upon the year she lived with father prior to her removal. However, the department believed the relationship was minimal because she now looked to her current caregivers as her "primary parental figures." H.V.'s relationship with father was described as "less than minimal" because she was removed from her father's custody at only two days old. The department concluded its assessment for both children by stating it would not be detrimental to terminate parental rights.

At an evidentiary hearing held on October 27, 2022, father and mother testified in support of their section 388 petitions. Father testified that he has been attending "NA" classes weekly for the past four months and anticipated completing his substance abuse program the following month. He claimed his date of sobriety to be May 2022, but he disagreed with the results of his positive test for methamphetamine from that same month. He also disputed the department's reporting of the number of his missed visits, and he claimed to have only missed visits due to court conflicts or transportation problems. Father testified that N.V. ran up to him during visits and asked to go home with him. The juvenile court ultimately denied both parents' petitions, and it found that father's circumstances were still changing.

A supplemental report prepared by the department in November 2022, provided updates on 11 additional visits for father. The report also included a spreadsheet documenting the number of visits attended or missed since the children's removal, and the provided reasons that visits were missed. Thirteen of father's visits were missed due to his absence or cancellation without a documented excuse.

On December 13, 2022, mother and father were present for the contested section 366.26 hearing. The social worker testified about the number of visits that were available to the parents and how she prepared the spreadsheet detailing the parents' visitation attendance. The juvenile court indicated it had reviewed the transcript from the evidentiary hearing on the parents' section 388 petitions, and it would consider the parents' testimony for the section 366.26 hearing.

Counsel for mother and father both requested that the juvenile court apply the beneficial parent-child relationship exception to adoption. Father's counsel argued that the description of visits between father and the children from the department's reports demonstrated "very, very loving interactions," and he asserted that the children had a strong bond with father. Counsel for the children acknowledged that the court could find regular visitation, but she did not believe the parents demonstrated a beneficial relationship that outweighed the benefits of adoption. The department's counsel argued that the parents failed to prove any of the three prongs articulated in the case of *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*).

After hearing argument from all counsel, the juvenile court determined that the parents failed to establish the first prong of the beneficial parent-child relationship exception by regularly visiting and contacting the children. As to the second prong, regarding father and the children's relationship, the court stated, "There does seem to be a positive visitation relationship between the father and the children, but there is no evidence that there's a substantial positive emotional attachment. The visits end without problem. It seems that they—they have a good visiting time, but when it's time for children to go with the caretakers, there is no display of anxiety or sadness when the visits are over."

The juvenile court then concluded its ruling as follows:

> "And as to the third prong, that termination of parental rights would be detrimental to the child, here I'm weighing the severance versus the

6

benefits of adoption that I would have to find that the detriment to the child of terminating parental rights would be so detrimental that it would outweigh any of the benefits of adoption. The court does not see any evidence here that there would be severe detriment, that it would outweigh the permanency that adoption offers. They've been in their placement for quite some time. They've been thriving in their placement. I don't think there would be much of an adjustment period particularly because the parents have not visited regularly and consistently. [¶] So for those reasons, the court will follow the recommendations in the report."

The juvenile court proceeded to terminate the parental rights of mother and father and selected a plan of adoption for the children. Father filed a timely notice of appeal on the date of the hearing.

## DISCUSSION

### I. Beneficial Parent-Child Relationship Exception

Father contends the juvenile court erred when it did not apply the beneficial parent-child relationship exception to adoption. He asserts the court erroneously determined that he did not maintain consistent visitation with the children or have a positive emotional attachment with the children. Father also argues the court failed to examine the evidence in the third step of the parental-benefit exception analysis by engaging in a "subtle, case-specific inquiry" on the issues related to the exception.

#### A. *Legal Principles*

At a section 366.26 hearing, when the juvenile court finds by clear and convincing evidence the child is adoptable, it is generally required to terminate parental rights and order the child be placed for adoption unless a statutory exception applies. (§ 366.26, subd. (c)(1).) One of the statutory exceptions is the beneficial parent-child relationship exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id*., subd. (c)(1)(B)(i).)

7

A parent claiming an exception to adoption has the burden of proof to establish by a preponderance of evidence that the exception applies. (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252.) Thus, the parent must prove three elements in order to prevail under the beneficial relationship exception: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 631.)

The first element of the beneficial relationship determination asks the "straightforward" question of whether the parent visited consistently, considering the extent permitted by court orders. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The focus is on the best interest of the child as opposed to punishing or rewarding parents for good behavior in maintaining contact. (*Ibid*.)

The second element of the exception asks whether the child would benefit from continuing the relationship. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The parent-child relationship "may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Ibid*., quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The juvenile court's focus should again be on the child, and it "must remain mindful that rarely do '[p]arent-child relationships' conform to an entirely consistent pattern." (*Caden C.*, at p. 632.)

When considering the third element, courts must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) Potential negative effects from severance of the relationship might include "emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression." (*Ibid*.) An adoptive home might provide a

new source of stability that alleviates emotional instability and preoccupation leading to those problems, making the loss "not, at least on balance, detrimental." (*Ibid.*) Under this element, the court is again guided by the child's best interest, but in a "specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' " (*Ibid.*)

In *Caden C.*, the Court of Appeal held "that because the parent continued to struggle with substance abuse and mental health issues and because of the risks of foster care and benefits of the potential adoptive home, no reasonable court could find the child's relationship with his parent outweighed the benefits of adoption." (*Caden C.*, *supra*, 11 Cal.5th at pp. 625–626.) Rejecting that conclusion, our Supreme Court found "[t]he Court of Appeal did not explain how the parent's struggles related to the specific elements of the statutory exception: the importance of the child's relationship with the parent or the detriment of losing that relationship." (*Id*. at p. 626.) A parent's struggles with issues that led to dependency were determined to be relevant only to the extent they inform whether the child would "benefit from continuing the relationship and be harmed, on balance, by losing it[.]" (*Id*. at p. 638.)

**B.      *Standard of Review***

Appellate courts review a juvenile court's ruling on the application of the beneficial parent-child relationship exception using a "hybrid" standard. (*Caden C.*, *supra*, 11 Cal.5th at p. 641.) The substantial evidence standard applies to the first two elements of regular visitation and existence of a beneficial relationship. (*Id*. at pp. 639–640.) The court's decision as to the third element—whether termination of parental rights would be detrimental to the child—is reviewed for an abuse of discretion. (*Id*. at p. 640.) "Review for abuse of discretion is subtly different, focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Id*. at p. 641.)

9

The standard of review of a court's determination that a parent did not meet his or her burden to prove an exception to termination of parental rights is "whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)  Specifically, the question is "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' "  (*In re I.W.*, at p. 1528.)

**C.     *Analysis***

In the present case, the juvenile court determined that father did not meet his burden of proof as to the application of the beneficial parent-child relationship exception. Father contends that evidence was presented that would support a finding of the existence of a beneficial parent-child relationship.  The department's counsel disputed father's claim of maintaining regular visitation and contact with the children throughout the proceedings.  In fact, the department provided evidence that father missed at least 40 visits, and father merely disputed the department's calculation without providing a different number of missed visits.  However, even if we were to accept that father maintained regular contact with the child, he is unable to establish that the benefits of maintaining the parental relationship outweighed those provided by adoption.

In support of his contention, father cites to evidence that the children had positive interactions with him during visits.  Father's suggestion that there was evidence that would support a finding that such a beneficial relationship existed ignores the fact that it was his burden to prove the exception.  (See *In re Travis C.* (2017) 13 Cal.App.5th 1219, 1225 [" 'The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed [the] other evidence.' "].)  Evidence that the children had pleasant visits with father is not enough to preserve parental rights.

10

(See *In re Derek W.* (1999) 73 Cal.App.4th 823, 827 ["The parent must do more than demonstrate 'frequent and loving contact[,]' [citation] an emotional bond with the child, or that parent and child find their visits pleasant"].) The children need permanency and stability in a safe and loving home, which the current care providers are willing and able to provide. Father's limited relationship with the children is not that extraordinary case where preservation of parental rights outweighs the preference for adoption. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1166.) Based on the present record, we cannot find that the evidence compels a contrary finding as a matter of law.

Father cites the case of *In re J.D.* (2021) 70 Cal.App.5th 833 (*J.D.*) in support of his contention that the juvenile court's orders must be reversed for improper consideration of certain factors. In *J.D.*, the appellate court concluded that it was unclear to what extent the juvenile court—there, acting before *Caden C.*—considered improper factors at the second step of analyzing the parent-child beneficial relationship exception, and it reversed and remanded for a new section 366.26 hearing in accordance with *Caden C.* (*J.D.*, *supra*, 70 Cal.App.5th at pp. 865, 870.) Specifically, it observed that the court had appeared to improperly consider "the mere fact [that mother] had been unable to succeed in overcoming her parenting struggles[,]" "the suitability of [the minor's] current placement[,]" the minor's attachment to his current caregiver, and the court's determination that mother did not occupy a "parental" role—all factors improper under *Caden C.* (*J.D.*, at pp. 864–865.)

The case cited by father is inapposite because the children's section 366.26 hearing was held in December 2022, more than a year after *Caden C.*, so the juvenile court had the benefit of the Supreme Court's analysis, which was cited by the department's counsel in closing argument. Furthermore, the court in this case did not refuse to apply the beneficial parent-child relationship exception based on an improper comparison concerning the relationship between the children and their parents and their care providers. There is also no indication that the court relied on the social worker's

11

statement that the parents lacked a primary attachment to bar the beneficial parent-child relationship exception.

In considering the beneficial parent-child relationship exception here, the juvenile court began by explaining the minimal portion of the children's lives spent in the parents' custody, positive interactions during father's visitation, and absence of anxiety or sadness when visits were over—all factors approved for consideration by our Supreme Court in *Caden C.* (See *Caden C.*, *supra*, 11 Cal.5th at p. 632 ["the focus is the child. And the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' "].) We do not find that, in making its determination that the children lacked a substantial, positive emotional attachment with father, the court abused its discretion by relying on impermissible factors. The court's ruling on the exception did not consider the children's bond with their care providers without an assessment of their relative bond with father.

Finally, we reject father's claim that the juvenile court did not engage in the "subtle, case-specific inquiry" required because it erroneously found that father did not prove the first two prongs of the exception. While section 366.26, subdivision (c)(1)(D) requires the court to " 'state its reasons in writing or on the record' " in concluding that termination of parental rights would be detrimental to the child, the court is not required to recite specific findings when it concludes that terminating parental rights would not be detrimental to the child. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156.) Although a trial court's statement of its findings or an explanation of the reasons for its decision may be helpful in conducting appellate review, it is not a legal requirement. (*Ibid*.) We do not presume the court erred. Rather, we indulge in every presumption to uphold the judgment and it is the appellant's burden to affirmatively demonstrate error. (*A.L.*, at p. 1161.)

12

In sum, the evidence in the record weighed in favor of the preferred permanency option of adoption.  Given the fact that the children spent the last 17 months of their very young lives in foster care and had care providers committed to providing a permanent plan of adoption, we find the juvenile court did not abuse its discretion. Under these circumstances, the court's ruling is entitled to a presumption of correctness, and remand is unwarranted.  (*Caden C.*, *supra*, 11 Cal.5th at p. 640.)  Therefore, the court did not err in declining to apply the beneficial parent-child relationship exception, and its orders terminating father's parental rights were proper.

## DISPOSITION

The juvenile court's orders are affirmed.