Filed 8/17/23  In re A.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>V.C.,<br><br>Defendant and Appellant. | F085145<br><br>(Super. Ct. No. 22CEJ300162-1)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Elizabeth Egan, Judge.

Judith A. Carlson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Carlie Flaugher, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Meehan, J. and DeSantos, J.

In this juvenile dependency case, V.C., presumed mother of minor, A.C. (mother), appeals from the juvenile court's findings and orders made at the combined jurisdiction/ disposition hearing. She contends the court erred by finding A.C. was described by Welfare and Institutions Code[1] section 300, subdivisions (b) and (d) and, in the alternative, by ordering A.C. removed from mother's physical custody.

While this appeal was pending, A.C. was returned to mother's custody on family maintenance services. The Fresno County Department of Social Services (department) contends that because A.C. was returned home, the issues presented in the instant appeal are moot and has moved to dismiss the appeal.

We disagree with the department that the juvenile court's order returning A.C. to mother's custody has rendered moot mother's challenge to the jurisdictional findings but agree that it has rendered moot her challenge to the removal order. As such, we deny the department's motion to dismiss the appeal in its entirety but decline to address the issues pertaining to the removal order. Finding no error with regard to the juvenile court's jurisdictional findings, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At the initiation of the dependency proceedings, A.C. was 11 years old. She lived with mother; mother's wife and A.C.'s stepmother; mother's wife's 23-year-old son and A.C.'s stepbrother, S.G.; and mother's wife's mother.[2] On May 6, 2022, A.C. disclosed to a teacher that S.G. had molested her. A.C. reported two incidents: (1) in 2020, S.G. put his hand in A.C.'s pants and touched her vaginal area while they were in the kitchen of the home, and (2) earlier in 2022, he went into the bedroom she shared with her

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

[2]     A.C.'s biological mother was a party to the dependency proceedings. She is not a party on appeal, and no issue pertains to her. We omit facts pertaining to A.C.'s biological mother, as they are not relevant to the present appeal.

mother and stepmother while everyone was sleeping, tapped her on the shoulder, brought her into his room, and fondled her breasts. In November 2021, S.G. had been arrested "for multiple sexual abuse charges on other individuals, to include date rape." Law enforcement placed a section 300 hold on A.C., and she was placed in a foster home.

When law enforcement initially contacted mother, she denied knowledge of the abuse and "presented as agitated." She informed officers her wife would likely "kick her out" of the home. When the investigating department social worker made contact with mother, she presented as emotional and tearful. When the social worker asked mother if she believed A.C.'s disclosures, mother responded that "it was not that she did not believe her, but she had been around her daughter all the time and, therefore, did not see when this could have happened." Mother informed the social worker she planned to move out of the home she shared with her wife. Mother was aware of S.G.'s November 2021 arrest but did not perceive him as a threat; she thought he was scared of her and had not seen him for three to four days; she stated he spent most of the time with his maternal grandmother. Mother denied having any suspicions that S.G. had sexually abused A.C.

A.C. told the investigating social worker she had not told her mother or stepmother about the abuse because she did not want to ruin Mother's Day.

On May 9, 2022, mother informed the social worker she had moved out of her wife's home over the weekend, was staying with her cousin, and she and A.C. would not be returning to the home. She apologized for initially presenting as frustrated and stated she felt she had failed A.C. She further informed the social worker that when S.G. was arrested in November 2021, she asked A.C. if he had touched her inappropriately, and A.C. denied that he had. She stated that S.G. had never been in trouble before and had told mother that the charges were false, that he was gay, and that he had been drinking when a girl pressured him into sleeping with her. At a Team Decision Making (TDM) meeting later that day, mother was asked if she believed A.C.'s disclosures, and mother responded, "Yes."

3.

On May 10, 2022, the department filed a petition on behalf of A.C. alleging she came within the juvenile court's jurisdiction under section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse). The petition alleged A.C. was sexually abused by S.G., a member of her household, and that mother failed to adequately supervise or protect A.C. from the abuse as she knew or should have known of it.

At the detention hearing conducted on May 11, 2022, the juvenile court ordered A.C. detained from mother. In June 2022, A.C. was moved from her initial placement to her aunt's home.

The department's jurisdiction/disposition report dated June 22, 2022, recommended the juvenile court sustain the dependency petition, adjudge A.C. a dependent of the court, remove A.C. from mother's physical custody, and order mother to participate in family reunification services.

The report indicated that A.C. had undergone a MDIC interview where she again described two incidents of sexual abuse by S.G.: one in the summer of 2020 and once a few months prior. A.C. told the interviewer that the first incident happened when her grandmother was home but asleep. While she was speaking with S.G., he put his hands in her shorts from behind and touched her private area underneath her underwear. He then took her to his room and asked her to take off her pants, but A.C. said no. A.C. explained she asked to go back to her room, and S.G. allowed her to though she felt he would have continued to touch her. When the interviewer asked A.C. how she knew how to leave the incident, A.C. explained mother was "super protective" of her and had warned her against dangerous situations such as encounters with strangers and had taught her to say no when she felt uncomfortable. A.C. explained that during the second incident after she followed S.G. out of the bedroom she shared with her mother and stepmother, he asked her to take off her pants. She said no, and S.G. reached for her chest and "flicked her chest." She continued to say no, and he allowed her to go back to her room. She had disclosed the abuse to several of her friends, her teacher, and her

school counselor. When asked about her relationship with S.G., A.C. stated they "hardly ever talked."

The report further indicated mother had begun engaging in some services including attending a domestic violence index and being recommended to particulate in a 52-week child abuse intervention program and completing a mental health assessment and being recommended ongoing treatment. The social worker opined "[i]t is evident that [mother] has not ameliorated the issues that led to [A.C.'s] removal from [mother's] care in that [mother] is in the process of getting connected to services and engaging in services."

The police report related to A.C.'s disclosures indicated that S.G.'s November 2021 arrest had been for "four felonies regarding sexual misconduct."

In an investigation report prepared by A.C.'s counsel dated August 10, 2022, it was reported A.C. stated she and mother had a good relationship; she felt comfortable with mother and safe in her care. She wished to return to mother's care as soon as possible and believed mother would protect her and not allow anyone to harm her.

At the combined jurisdiction/disposition hearing conducted on September 14, 2022, mother contested jurisdiction and, in the alternative, the department's dispositional recommendation that A.C. be removed from mother's physical custody. Mother testified she raised A.C. since she was born and provided her with love, care, and support. According to mother, A.C. was smart and loving, liked to draw, and had a good imagination. A.C. was trusting yet "really shy."

Mother testified she and A.C. moved into the home with her wife, S.G., and her mother-in-law in September 2020. She did not know S.G. prior to moving into the home and had only met him once. Her first impression of him was that he was quiet and kept to himself, and she thought he was gay. He painted his nails, wore high heels, and "even w[ore] that stuff that makes your eye lashes puffy." He always stayed to himself, in his own room, or in his grandmother's room. She went days without seeing S.G. or her

5.

mother-in-law because of the way the house was laid out, and they did not have meals together. Mother "[h]ardly ever" saw A.C. interact with S.G. She never noticed anything unhealthy or suspicious between them and noted they "never even talked to each other" and she "barely even saw them to say hi or bye."

Mother said A.C. was only at the house when mother was also there. Mother would drop A.C. off at daycare when she went to work. She "[n]ever" left A.C. with S.G. alone at the home and "hardly ever left her anywhere." Mother was not aware of any criminal history with regard to S.G.; she stated, "He's never been trouble. He didn't have no parking tickets. He's never had any contact with police. He's like—he wasn't bad. Real quiet. Never talked to nobody."

In November 2021, mother became aware of criminal charges against S.G. for sexual assault of an adult. He was bailed out and returned back to the home. It was not her decision to allow him back in the home; it was his mother's and grandmother's because it was their apartment. When asked whether she voiced any objections to him coming home, mother responded, "We thought he was gay. So if you have a son and he has a girl say something about him are you going to back up the girl that you don't know or your son that's telling you that this didn't happen?" When asked if mother became more vigilant, she responded that her supervision of A.C. "has always stayed the same." A.C. was either with mother, at daycare, or at school. They even slept in the same room. After mother found out about the charges, she said to A.C., "he's being charged with some really crazy stuff, if he's ever touched you, hurt you, bothered you, said anything to you, you need to let me know now so we can leave." A.C. did not disclose any sexual abuse at that time.

Mother testified she first found out about the sexual abuse when A.C. called her to tell her about it on May 6, 2022. Mother headed straight to the school. Mother was "pissed"; "mad"; and "hurt" when she learned of the abuse. She could not believe it because she was always with A.C. If she had known about the abuse earlier, she would

6.

have left the home with A.C. and called the police. The day after A.C. was removed by the department, mother moved to her cousin's home, where she still lived. When asked if she planned to resume a relationship with her wife, she responded, "I would never pick anybody over my daughter. I don't care if I end up alone. There's nobody in this world that's important to me like her."

The supervising social worker assigned during the emergency response stage of the case testified there was no indication in the department's detention report that A.C. had told her mother or anyone else in the household about the sexual abuse prior to the disclosure that initiated the case. There was "no information" that mother knew of the sexual abuse of A.C. before A.C. called mother on May 6, 2022.

The currently assigned social worker testified she attended A.C.'s MDIC interview where A.C. stated she did not report to mother when the first assault happened. During the second assault, she did not wake up mother. The social worker recalled first meeting mother on or around May 20, 2022. The social worker's first impression of mother was that she "was a very concerned parent who was determined to do whatever it takes to … have her child returned to her care." When the social worker first contacted mother, mother was in shock and stated she did not know how the abuse could have happened; she did not directly state she did not believe A.C. and appeared willing to put in the effort to take A.C. away from the home. After working with mother for several months, the social worker felt mother met A.C.'s emotional needs. Based on mother's history with A.C. and A.C.'s accounts in describing her relationship with mother, the social worker believed mother could provide stability, support, love, and care to A.C. When asked if mother took responsibility for what was happening with A.C., the social worker responded, "Yes, [mother] has expressed that she feels a lot of guilt and holds herself accountable for exposing [A.C.] to … that environment. And she has informed me that she will not make the same mistake again."

The juvenile court admitted into evidence a document certifying mother had completed a parenting class in September 2022 and a document verifying mother lived with her cousin.

The department asked that the court follow the recommendations set forth in its report. A.C.'s counsel stated only, "[A.C.] wishes to return to … mother …. She feels safe in her care and would like that to happen as quickly as possible." Mother's counsel asserted the department had not met their burden to prove that mother knew or reasonably should have known about the sexual abuse. A.C. spoke on her own behalf, stating, "all I really want is to go home…. I find it unfair that I was taken away from my mom and she didn't do anything wrong. I've stated multiple times that she didn't know and that she never would do anything to hurt me. And if she would have known sooner, she would have took [*sic*] me out of the house right away. And she's always been protective of me. And she would never let anything bad happen to me. She would never let anyone hurt me."

The court found the allegations in the dependency petition proven by a preponderance of the evidence and that A.C. was described by section 300, subdivisions (b) and (d). In ruling, the court noted that mother was aware S.G. was arrested for sexual assault offenses, including allegations of rape, and that mother was concerned and the thought that A.C. may have been at risk entered in her mind, evidenced by the fact that she asked A.C. about it. The court further noted that mother had commented to the investigating social worker that her wife was going to kick her out of the home. The court concluded that A.C. had "suffered serious harm by being sexually abused while in the custody of mother and at substantial risk of further harm by mother's failure to provide adequate supervision and protection. Mother knew or should have known of the risk her daughter faced. The risk present is due to mother's inability to recognize the serious risk of harm posed by that step brother when she had reason to know."

As to disposition, the court found there was or would be substantial danger to the physical health, safety, protection, or physical or emotional well-being if A.C. were returned home and there were no reasonable means by which A.C.'s physical health could be protected without removing A.C. from mother's physical custody. The court ordered A.C. removed from mother's physical custody and ordered mother to participate in reunification services.

## DISCUSSION

### I. The Department's Motion to Dismiss

On April 17, 2023, the department filed a motion to dismiss the appeal as moot. Attached to the motion was a minute order from the six-month status review hearing conducted on March 8, 2023, indicating that the juvenile court ordered A.C. to remain a dependent of the court and be returned to mother on family maintenance services. The department contended that in light of the recent orders, mother's appeal is moot because "no effective relief could be granted to [m]other … as she already has care and custody of A.C."

We agree with the department in part, but it would not be appropriate to dismiss the appeal in its entirety. Mother's challenge to the jurisdictional findings has not been rendered moot by the return of A.C. to mother because A.C. remains a dependent of the juvenile court. Were we to grant mother the relief she has requested with regard to the jurisdictional issue, the result would be dismissal of dependency jurisdiction. Because the jurisdictional issue is not moot, we deny the department's motion to dismiss the appeal as moot. As we explain in Part III of this opinion, we agree the removal order issue is moot, and we therefore decline to address it.

### II. Sufficiency of the Evidence to Support the Jurisdictional Findings

The juvenile court's jurisdictional findings are determined by a preponderance of the evidence. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and

9.

disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) The appellate court does not reweigh the evidence or exercise independent judgment, but merely determines if there are sufficient facts to support the findings of the trial court. We must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*) " 'The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Travis C.* (2017) 13 Cal.App.5th 1219, 1225.)

The specific jurisdictional allegations found true by the juvenile court are as follows. The department alleged A.C. came within the juvenile court's jurisdiction under section 300, subdivision (b) generally because she "ha[d] suffered, or there is a substantial risk that [she would] suffer, serious physical harm or illness." The box on the dependency petition form that reads: "as a result of the failure or inability of … her parent … to supervise or protect [her] adequately" was checked. "Count b-1" alleged "[Mother] has failed to provide adequate supervision and protection for her daughter from being sexually abused by [S.G.], who is a member of the minor's household. On or about May 6, 2022, [A.C.] disclosed to being inappropriately touched in her vaginal area under her clothing and her breast being fondled by [S.G.] on two separate occasions. [Mother] knew, or reasonably should have known, that [A.C.] was being sexually abused by [S.G.]"

Under section 300, subdivision (d), two boxes were checked on the dependency petition form: (1) "The child has been sexually abused, or there is a substantial risk that

10.

[she would] be sexually abused, as defined in subdivision (b) of section 11165.1 of the Penal Code, by his or her parent or guardian or a member of the child's household" and (2) "The parent or guardian has failed to protect the child adequately from sexual abuse and the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." "Count d-1" alleged "[A.C.] has been sexually abused by [S.G.], who is a member of the minor's household. On or about May 6, 2022, [A.C.] disclosed to being inappropriately touched in her vaginal area under her clothing and her breast being fondled by [S.G.] on two separate occasions." "Count d-2" alleged: "[Mother] is unable to protect [A.C.] from being sexually abuse[d] by [S.G.], who is a member of the minor's household. On or about May 6, 2022, [A.C.] disclosed to being inappropriately touched in her vaginal area under her clothing and her breast being fondled by [S.G.] on two separate occasions. [Mother] knew, or reasonably should have known, that [A.C.] was being sexually abused by [S.G.]"

Mother contends substantial evidence did not support the juvenile court's findings that mother knew or should have known of the risk of abuse nor that the abuse resulted from mother's failure or inability to protect her. She maintains she was a protective parent who took many steps to make sure A.C. was supervised, and there was nothing else she could have done to protect A.C. from the two incidents of abuse. On appeal, the department acknowledges there was no evidence mother actually knew of the abuse until A.C. was removed. The department contends, however, the evidence supported that mother should have known of the danger of the abuse and failed to protect A.C., primarily based on how she handled the knowledge of S.G.'s November 2021 sexual offense charges, and therefore adequately supported the jurisdictional findings.. The

11.

department contends the evidence does not show that mother "intentionally allowed the abuse or ignored it, but that [she] placed her daughter at continued risk."**3**

   We conclude the juvenile court's findings are supported by substantial evidence. We acknowledge the juvenile court, in determining whether mother should have known of the risk of abuse and therefore failed to or was unable to protect A.C. from it, was

---

**3**     Arguably, the juvenile court could have taken jurisdiction over A.C. without making any finding that mother knew or should have known of the risk of abuse or that the abuse resulted from her failure or inability to protect A.C.

   Section 300, subdivision (d) provides that a child comes within the juvenile court's jurisdiction when "[(1)] The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by the child's parent or guardian *or a member of the child's household, or* [(2)] the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." (Italics and bold added.) The disjunctive "or" suggests that under section 300, subdivision (d), jurisdiction can be asserted if the child falls under any of the clauses, meaning that under the first clause, when a child is sexually abused by a member of the child's household, the statute does not expressly require that the parent know or reasonably should know the child is at risk of abuse. Count d-1 in the underlying dependency petition invokes the first clause in section 300, subdivision (d) and alleges no knowledge or failures on mother's part. As it is undisputed that A.C. was sexually abused and that S.G. was a member of A.C.'s household, it appears the juvenile court's finding that jurisdiction was proper under section 300, subdivision (d) was appropriate without regard to mother's specific arguments regarding her role in the abuse.

   It could be argued that this issue is dispositive. "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; see *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

   In any event, because these issues were not raised or briefed by the parties, we make no definitive conclusions and do not rely on these views; we focus only on the issues as they are framed by mother and responded to by the department. As we explain in the body of this opinion, all of the juvenile court's jurisdictional findings are supported by substantial evidence.

12.

confronted with nuanced considerations. These considerations included whether a parent is put on notice of potential sexual assault of a child by a person in the household who is charged, but not yet convicted, of sexual assault of an adult woman, and what protective measures are required of a parent in mother's position who does not have the benefit of hindsight. We reject mother's assertion on appeal, however, that in light of S.G.'s November 2021 charges, that she had "no reason to suspect he might sexually abuse A.C." The reports indicated that S.G. was charged with four felony sexual offenses, which included "rape" or "date rape." While the department did not provide much detail about the specifics of S.G.'s charges, the juvenile court had enough information to conclude they were very serious charges. Even though the charges had not yet resulted in a conviction and did not involve a child victim, the juvenile court could have reasonably concluded they were sufficient to put mother on notice of a risk to A.C., as they demonstrated S.G. may have had the propensity or willingness to commit sexual offenses. Notably, as the court and the department point out, mother actually made a connection between S.G.'s charges and risk to A.C., enough to ask whether S.G. had touched A.C. Mother's doubt, unfortunately, was confirmed, and S.G. did indeed pose a serious risk to A.C.

Further, by moving out of the home immediately after actually finding out about the abuse, mother demonstrated she was willing to make efforts to protect A.C. from S.G. moving forward, which we commend. By doing so, however, mother also demonstrated she had a family member with whom she could stay on a moment's notice and thus that she did have the opportunity to leave the home at the time of S.G.'s return on bail to at least keep A.C. safe until S.G.'s criminal case was resolved. We cannot say the juvenile court was unreasonable in concluding mother should have known of the risk of abuse and therefore failed to or was unable to protect A.C. from it, especially considering the preponderance of the evidence standard.

13.

We turn to the parties' disagreement about whether the department was required to show A.C. was at current risk of harm at the time of the hearing. There is a split of authority as to whether jurisdiction under section 300 requires proof of current risk to the child. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 [evidence of current risk is needed as of the date of the jurisdiction finding]; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1434–1439 [the plain language of section 300, subdivision (b) allows jurisdiction when the child has suffered a serious harm in the past].) Mother asserts there was no current risk to A.C. given mother's protective measures taken after finding out of the abuse, while the department takes the view no current risk is required, but in any event, the evidence supports a finding A.C. was at current risk. We need not resolve this issue because we conclude the juvenile court in the present case reasonably concluded by a preponderance of the evidence that risk posed to A.C. by mother still existed.

At the time of the jurisdiction/disposition hearing, mother had acknowledged she had some responsibility in what happened to A.C. but was not able to articulate what she could have done differently to protect A.C. from S.G. Mother met the criteria for a child abuse intervention program, but at the jurisdiction/disposition hearing, there was no evidence presented that she had begun classes. We note that A.C. had been sexually abused on two separate occasions by a member of her household, so the severity of the harm was great. In evaluating whether risk is "substantial," within the meaning of section 300, not only the probability of harm but the magnitude is relevant. (*In re I.J.*, *supra*, 56 Cal.4th at p. 778.) While we commend mother for taking immediate action to remove A.C. from the home once finding out about the abuse, and acknowledge the risk of future sexual abuse committed specifically by S.G. may have been low, the juvenile court could have reasonably concluded mother still, at the time of the jurisdiction hearing, lacked protective capacity to ensure nothing similar happened in the future.

14.

For the reasons we have stated, we conclude the juvenile court's findings that A.C. came within the court's jurisdiction under section 300, subdivisions (b) and (d) were supported by substantial evidence.

## III. Sufficiency of the Evidence to Support Findings Underlying Removal Order

Mother contends sufficient evidence did not support the juvenile court's factual findings underlying its removal order—that (1) there was, or would be substantial danger to the physical health, safety, protection, or physical or emotional well-being to the minor if she were returned to mother and (2) there were no reasonable means by which the minor could be protected without removal.

The department contends the issue is moot independent of its motion to dismiss the appeal, again asserting that there is no "effective relief" we can offer mother, and that we need not consider this issue. We agree with the department.

"An appellate court will not review questions which are moot and only of academic importance, nor will it determine abstract questions of law at the request of a party who shows no substantial rights can be affected by the decision either way. [Citation.] An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. [Citations.] On a case-by-case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054–1055.)

Here, if we were to reverse the removal order, there would be no effective relief for mother, as A.C. has already been returned to mother's care. Mother generally objects to the department's contention that the issue is moot but does not explain how reversing the juvenile court's removal order would provide relief to her in the event we were to affirm the court's jurisdictional findings. She suggests without any discussion that the removal findings she challenges could have adverse effects on the proceedings if not

15.

addressed. Notwithstanding that mother does not expound on this point, we are not persuaded. Since A.C. has been returned home, if, for whatever reason, the department again sought to remove A.C. from mother, it would have to file a supplemental petition alleging grounds for removal, and the juvenile court would have to evaluate A.C.'s circumstances at the time that petition was brought. Since the time of the court's original removal findings and orders, the court has made subsequent findings justifying the return of A.C. Thus, in this hypothetical, the original findings would likely have little to no relevance on the juvenile court's evaluation of a potential supplemental petition, and the court would have to reconsider the suitable placement of A.C. under the facts and circumstances as they exist at that time.

For these reasons, we decline to address mother's arguments regarding the juvenile court's removal order, as they have been rendered moot by the court's subsequent findings and order returning A.C. to mother's custody.

## DISPOSITION

The department's April 17, 2023 motion to dismiss is denied. The juvenile court's September 14, 2022 findings and orders are affirmed.

16.